UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | |
|---|---|
| HILDA L. SOLIS, Secretary of the United States Department of Labor,<br><br>     Plaintiff,<br><br>  v.<br><br>HERBERT BRUISTER; AMY SMITH; JONDA HENRY; J. MICHAEL BRUCE; SOUTHERN VENTURES, INC. F.K.A. BRUISTER & ASSOCIATES, INC.; BRUISTER & ASSOCIATES EMPLOYEE STOCK OWNERSHIP PLAN; BRUISTER & ASSOCIATES ELIGIBLE INDIVIDUAL ACCCOUNT PLAN; and BRUISTER & ASSOCIATES EMPLOYEE STOCK OWNERSHIP TRUST.<br><br>     Defendants. | Civil Action No. 4:10-cv-77 (DPJ) (FKB) |

**SECOND AMENDED COMPLAINT FOR ERISA VIOLATIONS**

Hilda L. Solis, Secretary of the United States Department of Labor ("the Secretary"), alleges:

1.   The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. One of ERISA's goals is to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively and prudently in the interests of plan participants. ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B). Fiduciaries must also discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are

consistent with ERISA's other fiduciary provisions.  ERISA §404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

2.      Title I of ERISA also creates per se prohibitions barring conflict of interest transactions between a plan and a party in interest.  ERISA §§ 406-408, 29 U.S.C. §§ 1106-1108. Congress concluded that certain transactions present such grave opportunities for abuse that, except in narrowly-defined circumstances, they should be prohibited.  Thus, subject to certain narrow exceptions, ERISA prohibits a fiduciary from causing a plan to engage in the sale or exchange of property between the plan and a party in interest, ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(a); prohibits a fiduciary from dealing with the assets of a plan in his own interest or for his own account, ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and prohibits a fiduciary from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan in his individual or any other capacity,  ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

3.      When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409(a) and 502(a)(2) & (5), 29 U.S.C. §§ 1109(a) and 1132(a)(2) & (5), to restore plan losses, to recover unjust profits and to obtain other remedial and equitable relief as the court may deem appropriate.  The Secretary may also seek injunctions to prevent those who have violated their fiduciary duties from managing or providing services to employee benefit plans in the future.

4.      Not only may fiduciaries be held directly responsible for losses and other relief for their own misconduct, but their co-fiduciaries may also be held liable for losses and other relief when those co-fiduciaries participate in, enable or fail to remedy another fiduciary's breach.  ERISA §§ 405(a)(1)-(3), 29 U.S.C. §§ 1105(a)(1)-(3).

5.        This case involves the sale of shares by Herbert Bruister, the former owner of a DirecTV installation company, to his employees through an ESOP for nearly twice as much as those shares were worth.  The employees overpaid for the company's shares as a result of the ESOP trustees' failures to meaningfully review any aspect of the stock purchases.  Instead, the ESOP trustees completely relied on the findings of an appraiser whose background, qualifications, certifications, and prior work were never adequately investigated.  The ESOP trustees failed to ensure that the financial information provided to the appraiser and used in his valuations was accurate and complete, to read through and understand the appraiser's valuations, and to question any of the assumptions underlying those valuations.  As a result of the trustees' complete neglect of their fiduciary responsibilities in approving valuations based on the appraisers' unsupported and unrealistic assumptions, the ESOP overpaid for shares in the company.  Those shares are now completely worthless because the company has since gone out of business.

## JURISDICTION AND VENUE

6.        This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.        Venue with respect to this action lies in the United States District Court for the Southern District of Mississippi, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

8.        The Plaintiff Secretary is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and other parties who commit violations of ERISA.  ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

9.          Southeastern Ventures, Inc. f.k.a. Bruister & Associates, Inc. ("BA") was a DirecTV installation company headquartered in Meridian, Mississippi.  BA established an Employee Stock Ownership Plan ("ESOP") on December 10, 2002, and an Eligible Individual Account Plan ("EIAP") on January 1, 2004.  BA is a "plan sponsor" of the BA ESOP and BA EIAP pursuant to ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  The BA ESOP and BA EIAP are collectively referred to as the BA Employee Stock Ownership Trust ("ESOT"), which held the assets of both plans.  The ESOP and EIAP are employee pension benefit plans as defined in ERISA § 3(2), 29 U.S.C. § 1002(2).  BA, the BA ESOP, the BA EIAP, and the BA ESOT are named as defendants herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

10.          A Board of Trustees was appointed to administer the BA ESOT.  At all relevant times, the Board of Trustees was a fiduciary to the ESOT with the authority to administer the ESOT Plan Document and Agreement, including investing assets in employer stock, voting stock, and bringing actions to enforce the rights of the ESOT.  At all relevant times, the Board of Trustees consisted of defendants Herbert Bruister and Amy Smith and at various periods of time it consisted of defendants Michael Bruce and Jonda Henry.

11.          At all relevant times, the ESOT Agreement and Plan Document provided that BA's Board of Directors had the authority to appoint and remove members of the BA ESOT Board of Trustees.  Therefore, the members of BA's Board of Directors are also plan fiduciaries.  At all relevant times, BA's Board of Directors consisted of defendants Herbert Bruister and Amy Smith.

12.          Defendant Herbert Bruister ("Bruister"), an individual residing in Meridian, Mississippi, served as the President of BA at all relevant times until the company's demise in the summer of 2008.  Bruister also served as a member of the BA ESOT's Board of Trustees from

December 10, 2002 through the present, and as a member of the BA ESOT's Board of Directors from at least December 10, 2002 until the company's 2008 demise.  During the entire time that he was a trustee of the BA ESOT, Bruister had the authority and responsibility to administer and manage the assets of the ESOT.  During the time that he was a member of BA's Board of Directors, Bruister was also responsible for selecting, monitoring and removing fiduciaries of the ESOT.  Accordingly, Bruister was a fiduciary of the ESOT as both a trustee and a Director pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

13.     Defendant Bruister, as the sole owner of BA, a seller of shares to the BA ESOT, a fiduciary of the BA ESOT, and an officer or director of the employee benefit plan or its sponsor was a party in interest pursuant to ERISA § 3(14), 29 U.S.C. § 1002(14).

14.     Defendant Amy Smith ("Smith"), an individual residing in Meridian, Mississippi, served as a member of the ESOT's Board of Trustees from December 10, 2002 to June 2008, as a member of BA's Board of Directors from at least December 10, 2002 until the company's demise in 2008, and as BA's office manager and comptroller for at least ten years leading up to the company's demise in 2008.  During the time that she was a trustee of the ESOT, Smith was responsible for administering and managing the assets of the ESOT.  During the time that she was a member of BA's Board of Directors, Smith was also responsible for selecting, monitoring and removing fiduciaries of the ESOT. Accordingly, Smith was a fiduciary of the ESOT as both a trustee and a Director pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21).

15.     Defendant Jonda Henry ("Henry"), an individual residing in Meridian, Mississippi, served as a member of the ESOT's Board of Trustees from November 11, 2003 to June 2008, as BA's outside accountant from at least December 2002 until the company's demise in 2008, and as Bruister's personal accountant from at least 1998 until present.  During the time that she was a trustee of the ESOT, Henry was responsible for administering and managing the

assets of the ESOT.  Accordingly, Henry was a fiduciary of the ESOT pursuant to ERISA §

3(21), 29 U.S.C. § 1002(21).

16.     Defendant J. Michael Bruce ("Bruce") served as a member of the ESOT's

Board of Trustees from at least December 10, 2002 to  November 11, 2003.  During the time that

he was a trustee of the ESOT, Bruce was responsible for administering and managing the assets

of the ESOT.  Accordingly, Bruce was a fiduciary of the ESOT pursuant to ERISA § 3(21), 29

U.S.C. § 1002(21).

<u>GENERAL ALLEGATIONS</u>

17.     Bruister, the sole owner of BA at all times through 2001, began looking into

how to divest himself of his ownership stake in BA and exit from the DirecTV installation

business at some point in 2001 or 2002.  Bruister and Bruce attempted to sell BA on the open

market in 2002 but were unable to complete a sale.  BA's sale was hindered by its contract with

DirecTV, which was non-exclusive and subject to cancellation by DirecTV with only 90 days

notice.  Bruister and Bruce subsequently looked into selling BA to its employees using an ESOP.

18.     At some point prior to October of 2002, Bruce hired Matthew Donnelly to do

a preliminary appraisal for the BA ESOT even though Bruce was not yet a fiduciary or trustee of

the ESOT.  In October of 2002, Donnelly assured Bruister that he looked forward to helping

Bruister "extract millions from your company tax-free."

19.     Bruce also needed an attorney to assist BA with establishing the ESOT.  One

name that Donnelly mentioned to Bruce was David Johanson ("Johanson"), whom Donnelly had

previously worked with establishing ESOPs.  At some point in the Summer of 2002, BA hired

Johanson and his law firm, Johanson Berenson ("JB"), as corporate counsel to assist with

implementing the ESOT.

20.      Bruister and Smith, members of BA's Board of Directors, appointed themselves and Bruce as trustees of the BA ESOT on December 10, 2002.

21.      On November 11, 2003, Bruce resigned as a trustee of the BA ESOT.  On the same day, Bruister and Smith appointed Henry to serve as a trustee to the BA ESOT.

22.      Bruce, Smith, and Henry employed and completely relied on Donnelly during their respective tenures as ESOT trustees without ever independently investigating his educational, criminal, or training background.  The ESOT trustees made no effort to learn about the veracity or substance of Donnelly's alleged professional certifications and affiliations.  They never contacted Donnelly's former clients for referrals, and never interviewed Donnelly regarding his valuation methodology or industry-specific expertise.

23.      Smith and Henry never interviewed or considered any other independent appraisers besides Donnelly.  They relied on the prior unsubstantiated judgment of Bruce that Donnelly should perform the valuations.

24.      Had the trustees assessed Donnelly's qualifications and background, they would have learned that:

    a.   Donnelly never graduated from college and never formally studied finance or accounting;

    b.   Donnelly's purported certifications and professional organization memberships were outdated, unrelated to an ability to perform appraisals, and/or not the result of passing any screening or examination process reflective of his knowledge of finance, accounting, or business appraisals;

    c.   Donnelly was convicted for felony embezzlement, a crime involving moral turpitude, from entities, including two trusts, in 1984.

25.     All of the financial information provided to Donnelly for his valuations was derived by Smith.  Smith lacked any formal background in finance or bookkeeping and never took any courses in accounting prior or subsequent to leaving college.  Smith has no understanding of Generally Accepted Accounting Principles or whether the financials she produced were in compliance with those standards.  Smith is unable to explain some of the entries in her own financial statements.

26.     The information that Smith provided to Donnelly was incomplete and inaccurate and never checked or verified by either Bruce or Henry.  Smith never provided compiled or audited financial reports.  She never provided information regarding BA's financial reserves or ability to meet financial obligations to the ESOT.  She also never provided Donnelly with BA's tax returns.  Additionally, Smith provided Donnelly with balance sheets that were out of balance and contained unexplainable and nonsensical entries.

27.     Donnelly stated in 2003 that BA was "the most difficult" company he had ever had to get financial data from for an appraisal.  He informed Johanson that Smith was "in over her head" and probably not qualified to serve as the overseer of BA's financials.

28.     Donnelly prepared valuations for all five of the ESOT's purchases of BA stock using financial information provided by Smith.

29.     The trustees first authorized the ESOT's purchase of BA stock on or about December 30, 2002.  The ESOT trustees subsequently authorized four more purchases of BA's stock on or about December 19, 2003, December 21, 2004, September 13, 2005, and December 13, 2005.  As a result of these five stock purchase authorizations, the ESOT acquired 100% ownership of BA.

30.     Smith, Bruce, and Henry failed to completely read and understand the valuation reports issued by Donnelly during their respective dates of service for the stock

purchases that they respectively authorized.  Their failure to adequately review Donnelly's valuations included failing to ensure that the financial information contained in the valuations was actually that of BA.  In addition, the ESOT trustees never understood the underlying assumptions in the valuation reports or the effect of these assumptions on the resulting valuations.  As a result, they were unable to – and did not – question any of Donnelly's assumptions regardless of how unsubstantiated or unrealistic those assumptions were.

31.     The ESOT trustees lacked any understanding of the various possible valuation methods, including those used by Donnelly, and why or whether certain methods were more or less appropriate for determining BA's fair market value.

32.     The ESOT trustees did not adequately evaluate BA's ability to pay back the loans it accrued for the purposes of selling shares to the ESOT.

33.     Donnelly's valuations were unreliable and grossly inflated the value of BA's shares.  The valuations contained numerous flaws, none of which was spotted or questioned by the ESOT trustees.  Donnelly's final valuations did not include the necessary business or industry research, accurate financial information, or analysis and realistic projections that specifically took into account the circumstances of BA and its industry.

34.     Had the trustees bothered to actually read, understand, and analyze Donnelly's appraisals, they would have found significant flaws in his reports, including, but not limited to:

   a.   Using inappropriate comparable companies;

   b.   Unrealistically optimistic and unsustainable projections of future
        profitability;

   c.   Failure to consider the effect of BA's business relationship with DirecTV
        on the company's valuation;

  d. Failure to consider the effect of low barriers of entry on competition and

   margins.

35. The ESOT's governing plan documents required the trustees to, among other

things, determine the prudence of the ESOT's investments.

36. Smith, Bruce, and Henry completely relied on the conclusions found in

Donnelly's final valuations for the five transactions that they respectively approved from

December 2002 through December 2005.

37. As a result of the ESOT trustees' approval of Donnelly's final valuations for

all five of the ESOT's stock purchases, the trustees authorized the ESOT to significantly overpay

Bruister for BA's stock.

38. Smith, Bruce, and Henry all had preexisting personal and business

relationships with Bruister.  Smith, Bruce, and Henry all had received monetary compensation

from Bruister for past services to BA, continued to receive monetary compensation from Bruister

for servicing BA, and/or enjoyed prior or present employment with BA as an outside agent.

Their judgment as trustees was affected by their acknowledged concern that the company

belonged to Bruister.

39. Defendants Bruister and Smith never refrained from the transactions as

members of BA's Board of Directors while they were present at the ESOT transaction meetings.

Bruister and Smith observed and participated in the meetings where the five ESOT transactions

were formally approved.  Bruister and Smith were present for the entirety or substantial entirety

of the meetings where the ESOT trustees decided whether to authorize the ESOT transactions

and ultimately, on every occasion, authorized those transactions.  Bruister and Smith also met

with the ESOT trustees outside of the transaction meetings regarding ESOT business, with the

chief topic of discussion being the valuations.  Bruister and Smith witnessed and participated in

the ESOT trustees' imprudent failure to adequately review the valuations and approval of the ESOT transactions without adequately considering the interests of the ESOT participants.

40.     In addition, although Defendant Bruister purported to refrain from acting as an ESOT trustee during the transaction meetings, he failed to adequately recuse himself from the transactions in his trustee capacity.  Due to his personal and business relationships with the trustees and involvement during and outside of the ESOT trustees' meetings approving the stock transactions with BA, Bruister remained a fiduciary at all times during the transactions.

<u>COUNT I</u>

**The Five ESOT Transactions – Imprudence, Disloyalty, and
Failure to Comply with Plan Documents -
ERISA §§ 404(a)(1)(A), (B), & (D).**

41.     Paragraphs 1 through 40 and paragraphs 69 through 71 are incorporated herein as though fully set forth.

42.     Defendant Smith, as a trustee of the ESOT, breached her fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), by, among other things:

a.     Hiring Donnelly to perform valuations for the ESOP without conducting any independent investigation into Donnelly's education, training, or criminal background, his former clients, or his valuation methodology or industry-specific expertise.

      b.      Relying on the conclusions in Donnelly's final valuation without conducting any independent investigation into Donnelly or adequately understanding the basis for the valuations.

      c.      Causing the ESOT to approve the purchase of BA's stock from Bruister at a price in excess of fair market value on all five separate occasions.

      d.      Causing the ESOT to approve the purchase of BA's stock from Bruister even as Defendant co-trustee Bruce was receiving a payment of five percent (5%) of the value of the December 30, 2002, transaction from Defendant Bruister.

43.      Smith failed to determine the prudence of the ESOT's investments as required by the terms of the ESOT's plan document in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

44.      As a result of the foregoing breaches of fiduciary duty, Smith caused a loss to the ESOT for which she is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

45.      Defendant Bruce, as a trustee of the ESOT, breached his fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), by, among other things:

      a.      Hiring Donnelly to perform valuations for the ESOP without conducting an adequate independent investigation into Donnelly's education, training, or criminal background, his former clients, or his valuation methodology or industry-specific expertise.

b.     Relying on the conclusions in Donnelly's final valuation without conducting any independent investigation into Donnelly or adequately understanding the basis for the valuations.

c.     Causing the ESOP to approve the purchase of BA's stock from Bruister at a price in excess of fair market value in December 2002.

d.     Receiving a payment of five percent (5%) of the value of the December 30, 2002, transaction from Defendant Bruister pursuant to his authorization of the stock purchase transaction.

46.     Bruce failed to determine the prudence of the ESOT's investments as required by the terms of the ESOT's plan document in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

47.     As a result of the foregoing breaches of fiduciary duty, Bruce caused a loss to the ESOP for which he is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

48.     Defendant Henry, as a trustee of the ESOT, breached her fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), by, among other things:

a.     Hiring Donnelly to perform valuations for the ESOT without conducting any independent investigation into Donnelly's education, training, or criminal background, his former clients, or his valuation methodology or industry-specific expertise.

13

b.     Relying on the conclusions in Donnelly's final valuation without conducting any independent investigation into Donnelly or adequately understanding the basis for the valuations.

c.     Causing the ESOT to approve the purchase of BA's stock from Bruister at a price in excess of fair market value in December 2003, December 2004, September 2005, and December 2005.

49.     Henry failed to determine the prudence of the ESOT's investments as required by the terms of the ESOT's plan document in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

50.     As a result of the foregoing breaches of fiduciary duty, Henry caused a loss to the ESOT for which she is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

51.     Defendant Bruister, as a trustee of the ESOT, breached his fiduciary duties to the ESOP to act solely in the interest of the participants and beneficiaries with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) & (B), by, among other things:

a.     Hiring Donnelly to perform valuations for the ESOP without conducting an adequate independent investigation into Donnelly's education, training, or criminal background, his former clients, or his valuation methodology or industry-specific expertise.

b.     Relying on the conclusions in Donnelly's final valuation without conducting any independent investigation into Donnelly or adequately understanding the basis for the valuations.

c.      Causing the ESOP to approve the purchase of BA's stock from himself at a price in excess of fair market value on all five separate occasions.

d.      Failing to prevent the other trustees from violating their duties to the ESOT when he knew or should have known that their investigation of Donnelly's background and their examination and understanding of his valuations was inadequate

e.      Paying five percent (5%) of the value of the December 30, 2002, transaction to Defendant Bruce pursuant to Defendant Bruce's authorization of the stock purchase transaction.

52.     Bruister failed to determine the prudence of the ESOT's investments as required by the terms of the ESOT's plan document in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

53.     As a result of the foregoing breaches of fiduciary duty, Bruister caused a loss to the ESOT for which he is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

54.     As set forth above, during their respective tenures as ESOT trustees, Bruister, Bruce, Henry, and Smith each (a) participated in each other's breach of duty, (b) enabled the each other to breach their own duties relating to the transactions, (c) knew or should have known of one another's breaches of fiduciary duty and failed to take action regarding the transactions, and (d) failed to make reasonable efforts under the circumstances to remedy those breaches of duty. ERISA §§ 405(a)(1)-(3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)-(3), 1132(a)(2) & (5).

55.     The ESOT's assets were controlled by Smith and Bruce, Henry, and/or Bruister at all times, making each responsible for their failure to use reasonable care to prevent co-trustees from committing a breach during their respective times of service.  Accordingly,

Bruister, Bruce, Henry, and Smith are liable as co-fiduciaries for the losses caused thereby.

ERISA §§ 405(b)(1)(A), 502(a)(2) & (5), 29 U.S.C. §§ 1105(b)(1)(A), 1132(a)(2) & (5).

56.     Defendants Bruister, Bruce, Henry, and Smith also violated their fiduciary duties to exercise their responsibilities solely in accordance with the documents and instruments governing the ESOT insofar as such documents and instruments are consistent with Title I of ERISA in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by failing to ensure and determine the prudence of the ESOT's investments.

COUNT II

**The Five ESOT Transactions –
Failure to Monitor - ERISA §§ 404(a)(1)(A) & (B):**

57.     Paragraphs 1 through 56 are incorporated herein as though fully set forth.

58.     Defendants Bruister and Smith were members of BA's Board of Directors and fiduciaries with the authority to appoint and remove trustees.  Defendants Bruister and Smith were obligated to monitor the ESOT trustees in the performance of their fiduciary duties and remove those trustees who failed to fulfill their fiduciary responsibilities.  At no time did Bruister and Smith review the fiduciaries' performance, even though they knew of the breaches set forth above, and at no time did they take action to replace themselves, Henry, or Bruce with a suitable and capable independent fiduciary in connection with the five ESOT transactions or take other action to prevent or remedy the five ESOT transactions, in violation of ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B).

59.     Bruister and Smith are liable for the breaches of each other as co-fiduciaries under ERISA § 405(a), 29 U.S.C. § 1105(a) for (1) participating knowingly in or knowingly concealing a co-fiduciary's breach, (2) enabling another fiduciary's breach through their own

breach of fiduciary duty, and (3) knowing of a co-fiduciary's breach and failing to make reasonable efforts to remedy it.

60.     As a result of the foregoing imprudent acts and omissions, Bruister and Smith caused a loss to the ESOT for which they are personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

<u>COUNT III</u>

**The Five ESOT Transactions – Prohibited Transactions**
**ERISA §§ 406(a)(1)(A)**

61.     Paragraphs 1 through 60 are incorporated herein as though fully set forth.

62.     By authorizing the ESOT to purchase shares of BA's stock for greater than "adequate consideration" (defined as the "fair market value of the asset as determined in good faith by the trustee or named fiduciary"), ERISA § 408(e), 29 U.S.C. 1108(e); ERISA § 3(18)(B), 29 U.S.C. 1002(18)(B), Bruce, Smith, and Henry engaged in a non-exempt prohibited transaction under ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A) for causing the ESOT to engage in a transaction that they knew or should have known was a direct sale of property between the plan and a party in interest.

63.     As a result of the foregoing prohibited transactions and the attendant knowledge acquired in his participation throughout, Bruister, a party in interest, knowingly participated in fiduciary breaches by receiving property, cash, or proceeds from the ESOT as part of the sale or exchange of ESOT shares from him to the ESOT, which he must restore to the ESOT under ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

64.      As a result of the foregoing prohibited transactions, Smith, Bruce, and Henry caused a loss to the ESOP for which they are personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

## COUNT IV

### The Five ESOT Transactions –
### Prohibited Transactions - 406(b)(1) & (2)

65.     Paragraphs 1 through 64 are incorporated herein as though fully set forth.

66.     Defendant Bruister, in his capacity as trustee, engaged in transactions between the ESOT and himself, the seller of BA shares, prohibited by ERISA and in violation of:

 a.     ERISA § 406(b)(1); 29 U.S.C. § 1106(b)(1) prohibiting him from dealing with the assets of the ESOT in his own interest and for his own account;

 b.     ERISA § 406(b)(2); 29 U.S.C. § 1106(b)(2) prohibiting him from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan in his individual or any other capacity.

67.     As a result of the foregoing breaches of fiduciary duty and prohibited transactions, Bruister caused a loss to the ESOT for which he is personally liable.  ERISA § 409(a), 29 U.S.C. § 1109(a).

## COUNT V

### The December 30, 2002 ESOP Transactions –
### Prohibited Transaction - 406(b)(3)

68.     Paragraphs 1 through 64 are incorporated herein as though fully set forth.

69.     Defendant Bruce was a trustee and fiduciary of the Bruister & Associates ESOT at the time that he authorized the ESOT to purchase 172,077.55 shares of Bruister & Associates, Inc. stock for $3,000,000 pursuant to a December 30, 2002 transaction.  Defendant Bruce was paid five percent (5%) of the value of the December 30, 2002, transaction by Defendant Bruister, the seller of shares in Bruister & Associates, Inc and an ESOT fiduciary himself.  Defendant Bruce's receipt of the five percent (5%) payment from Defendant Bruister

because he authorized and caused the ESOT's December 30, 2002, stock purchase transaction is prohibited by ERISA and in violation of ERISA § 406(b)(3); 29 U.S.C. § 1106(b)(3) prohibiting him from receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

70.     Defendant Bruister's payment of five percent (5%) of the value of the transaction to Defendant Bruce pursuant to Defendant Bruce's authorization of the December 30, 2002, transaction is prohibited by ERISA and in violation of:

a.     ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1) finding a fiduciary liable for the breach of another fiduciary where he participates knowingly in an act or omission of another fiduciary knowing such act or omission is a breach;

b.     ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) finding fiduciary liable for the breach of another fiduciary where, by his failure to comply with section 404(a)(1) in the administration of specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; and

c.     ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3) finding fiduciary liable for the breach of another fiduciary where he has knowledge of a breach by such other fiduciary and fails to make reasonable efforts under the circumstances to remedy the breach.

71.     As a result of the foregoing breaches of fiduciary duty and prohibited transactions, Defendants caused a loss to the ESOP for which they are personally liable. ERISA § 409(a), 29 U.S.C. § 1109(a).

## TOLLING OF THE STATUTE OF LIMITATIONS

72.     Defendants executed two separate tolling agreements with the Secretary.

73.     The first tolling agreement states, inter alia, that:

> The running of the statute of limitations contained in ERISA § 413, 29 U.S.C.
> § 1113, shall be tolled from December 30, 2008 through April 1, 2009, with
> respect to any action brought by the Secretary under Title I of ERISA
> involving any of the acts or omissions [concerning the Bruister & Associates,
> Inc. Employee Stock Ownership Plan and Eligible Individual Account Plan].
> As to any such action initiated by the Secretary against Respondents,
> Respondents shall not assert in any manner the defense of statute of
> limitations, the doctrines of waiver, laches, or estoppel, or any other matter
> constituting an avoidance of the Secretary's claims that is based on the time
> within which the Secretary commenced such action.  (Ex. 1 ¶ 2).

74.     The first tolling agreement defines "Respondents" as, inter alia, Herbert
Bruister, Amy Smith, Jonda Henry, J. Michael Bruce and David Johanson.  (Ex. 1 at 1).

75.     On November 25, 2008, Teresa Y. Huang, an associate attorney with
Johanson Berenson LLP, emailed the Secretary an executed first tolling agreement
containing the signatures of Defendants Bruister, Smith, Henry, Bruce and attorney
David Johanson.  (Ex. 1 at 4-8; Ex. 2 at 1).

76.     On March 26, 2009, the Secretary sent a copy of the second tolling agreement
to, among others, counsel for Defendants Bruister, Smith, Henry, and Bruce.  (Ex. 3).

77.     The second tolling agreement states, inter alia, that:

a.    "the Secretary and the Responding Parties . . . previously entered into an
      Agreement to Toll the Running of the Statute of Limitations which tolled
      ERISA's statute of limitations . . . through April 1, 2009."  (Ex. 4 at 2);

b.    "both the Secretary and the Responding Parties desire to extend the tolling
      of the statute of limitations" and that "[t]he running of the statute of
      limitations contained in ERISA . . . shall be tolled with respect to any

action under Title I of ERISA . . . against the remaining Responding

Parties from December 30, 2008 (the 'Effective Date[]')."  (<u>Id.</u> at 2 & ¶ 1);

c.   "the Responding Parties shall not assert in any manner the defense of

statute of limitations . . . [in] avoidance of the Secretary's claim that is

based on the time within which such action was commenced by the

Secretary after the Effective Date[]." (<u>Id.</u> ¶ 1).

78.    The second tolling agreement defines the "Responding Parties" to include,

<u>inter alia</u>, Herbert Bruister, Amy Smith, Jonda Henry, and Michael Bruce.  (Ex. 4 at 2).

79.    Both tolling agreements state that "[t]his document may be introduced as

evidence of tolling in any such action brought by the Secretary."  Ex. 1 ¶ 4; Ex. 4 ¶ 1.

80.    On March 27, 2009, the Secretary sent an email to Defendants' counsel

entitled "Bruister & Associates offer to meet prior to litigation letter attached," which

enclosed a letter that was also dated March 27, 2009.  (Ex. 5 at 1).  The letter states, <u>inter</u>

<u>alia</u>, that:

> It is the policy of this office to afford persons who may have liability for
> potential violations of the provisions of ERISA an opportunity to confer and
> offer such information as they may desire for consideration by the
> Department.  Accordingly, if any of the individuals named above would like
> to confer, we will be pleased to arrange a conference for that purpose.
> However, to do so prior to litigation, the tolling agreement previously emailed
> to you must be executed and returned to our office by 9 a.m. (EDT) on
> Monday, March 30, 2009.  (<u>Id.</u> at 2).

81.    On March 27, 2009, Rachel J. Markun, a partner with Johanson Berenson

LLP, emailed the Secretary that she had "been authorized by [Mr. Johanson] and the

responding parties to execute the tolling agreement and have attached it to this message."

(Ex. 6 at 1).  The executed tolling agreement was attached to Ms. Markun's email.  (<u>Id.</u> at

2-6).  Ms. Markun's email "further request[ed] the opportunity to confer with the Department as referenced in your letters enclosed in your email below.

Please confirm that you have received the tolling agreement in accordance with your deadline."  (Id. at 1).

82.      On March 27, 2009, the Secretary responded to Ms. Markun that a copy of the executed tolling agreement had been received.  (Ex. 6 at 1).

83.      On March 27, 2009, Shelli Shoults, of Johanson Berenson LLP, faxed a copy of the second tolling agreement "executed by Rachel J. Markun."  This copy of the executed second tolling agreement was signed by the Secretary on March 29, 2009.  (Ex. 4).

84.      Because the parties had agreed as to the execution of the second tolling agreement, the Secretary met with counsel for the Defendants to discuss the case on May 27, 2009 in Atlanta, GA.

85.      The first tolling agreement tolled the statute of limitations from December 30, 2008, through April 1, 2009.

86.      The second tolling agreement tolled the statute of limitations from December 30, 2008, until the agreement was terminated by either party, as set forth in ¶ 2 of the second tolling agreement.  (Ex. 4 ¶ 2).

87.      There is no provision in either the first or the second tolling agreement requiring both parties to sign the agreement before it becomes effective or that the Secretary return such agreement to Defendants with a signature by the Secretary.

88.      Defendants never requested from the Secretary a copy of either the first or second tolling agreement with a signature of the Secretary other than through discovery that has occurred in the instant case.

89.     The Secretary did not bring suit against Defendants during the time that the statute of limitations was tolled from December 30, 2008 until termination of the second tolling agreement.

90.     During the time period referenced in ¶ 89, while settlement discussions and further investigation were occurring, the Defendants did not dispute that the statute of limitations was tolled from December 30, 2008 until termination of the second tolling agreement.

91.     On April 26, 2010, three days prior to filing her original Complaint, the Secretary sent via FedEx and facsimile a letter to Mr. Johanson providing "notice of the Secretary's termination" of the second tolling agreement, in accordance with ¶ 2 of the second tolling agreement.  (Ex. 7).

<u>PRAYER</u>

**WHEREFORE**, the Secretary of Labor prays that this Court enter an Order:

1.     Requiring each of the fiduciary defendants involved with the five ESOT transactions, Bruce, Smith, Henry, and Bruister, jointly and severally to restore all losses caused to the ESOT as a result of their fiduciary breaches in connection with the five ESOT transactions;

2.     Requiring Bruister to disgorge any cash, payments, or proceeds that he received for any of the five ESOT transactions;

3.     Requiring Bruce to disgorge any cash, payments, or proceeds that he received pursuant to his service as a trustee during the December 30, 2002 transaction;

4.     Permanently enjoining all defendants from serving as fiduciaries or service providers to ERISA plans in the future;

5.      Granting such other relief as may be equitable, just and proper.

Respectfully submitted this 22nd day of March 2012.

For the Secretary:

M. PATRICIA SMITH
Solicitor of Labor

TIMOTHY D. HAUSER                        STAN KEEN
Associate Solicitor                      Regional Solicitor

LESLIE PERLMAN                           ROBERT LEWIS
Counsel for General Litigation           Counsel for ERISA

STEPHEN SILVERMAN                        By: /s/ Dane Steffenson
Trial Attorney                           DANE STEFFENSON
                                         Senior Trial Attorney

U.S. Department of Labor
Office of the Solicitor                   U.S .Department of Labor
Pension Benefits Security Division        Office of the Solicitor
P.O. Box 1914                             61 Forsyth St., Room 7T10
Washington, D.C. 20013                    Atlanta, GA 30303
202-693-5623                              404-302-5435
202-693-5610 (FAX)                        404-302-5438 (FAX)

silverman.stephen@dol.gov                 Steffenson.dane@dol.gov


                                          Attorneys for Plaintiff
                                          Secretary of the United States
                                          Department of Labor