IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THOMAS E. PEREZ, Secretary of
the United States Department of Labor                                           PLAINTIFF

v.                                                          CIVIL ACTION NO. 3:13cv1001-DPJ-FKB

HERBERT C. BRUISTER, et al.                                                 DEFENDANTS

consolidated with

JOEL D. RADER and VINCENT SEALY                                          PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:13cv1081-DPJ-FKB

HERBERT C. BRUISTER, et al.                                                 DEFENDANTS

ORDER

These consolidated cases are before the Court on Plaintiffs' Urgent and Necessitous Joint Motion to Temporarily Extend the Preliminary Injunction Until After a Hearing on the Merits [732]. For the reasons that follow, the motion is granted, and the Temporary Restraining Order [668] as modified and extended by the Consent Order [682] is extended through July 15, 2015.

I.      Facts and Procedural History

Following a 19-day bench trial, on October 16, 2014, the Court entered judgments in favor of Plaintiffs and against Defendants Herbert Bruister, Amy Smith, Jonda Henry, and the Bruister Family LLC ("BFLLC"), in the amount of $6,492,513.97. Defendants timely filed a Notice of Appeal [621] but were unable to post a supersedeas bond and obtain a stay of proceedings pending appeal pursuant to Federal Rule of Civil Procedure 62(d). Bruister has since moved to stay enforcement of the judgments pending appeal [722], but in the meantime, Plaintiffs have attempted to execute on the judgment. Plaintiffs allege that Bruister has

intentionally frustrated their collection efforts, and there is record evidence supporting that position.

At issue in the instant motion are certain life-insurance portfolios ("the viaticals") in which Defendant BFLLC had an interest. All parties agree that the viaticals are a promising—if not the most promising—asset that could be used to help satisfy the Court's judgments. By virtue of their nature as life-insurance policies, the viaticals require an ongoing funding stream to pay premiums and costs associated with maintaining them until maturity. At some point in late 2014, Premium Funding, LLC ("PF"), an entity controlled by Bruister's friend and business associate Nathan I. Prager, entered into a financing arrangement with BFLLC whereby PF would pay the premiums and costs of the viaticals in exchange for certain distributions and a security interest in the viaticals.

The Credit Agreement purports to have been executed on October 15, 2014—one day before the Court entered its judgments in these cases—but Plaintiffs have presented evidence that PF did not even exist until October 22, 2014, and that the financing arrangement may not have been finalized until as late as November or December 2014. This evidence suggests that the documents were backdated in an effort to frustrate execution on the October 16 judgments or to fabricate a lien in the viaticals senior to any liens created by the judgments.

In addition, the Credit Agreement indicates that BFLLC was the 100% owner of Bruister & Associates Investments LLC (BI) and that BI is "the owner and beneficiary" of certain viatical portfolios. Credit Agreement [736] at 2. Plaintiffs have presented evidence indicating that BFLLC transferred its 100% ownership interest in BI to Linda Brusiter in October 2014 and that she notified Prager of the change. Pls.' Resp. [737] Ex. 8 at 5. This occurred after judgment but

before the Credit Agreement apparently closed.

In January 2015, it appeared to Plaintiffs that the financing provided by PF could be in jeopardy, and Plaintiffs filed an *ex parte* motion seeking a temporary restraining order.  On January 16, 2015, the Court granted the *ex parte* motion and essentially ordered that the parties, including Prager and PF, maintain the status quo.  Order [668].  The Order froze assets owned or controlled by Bruister and BFLLC, enjoined Bruister and BFLLC from dissipating assets, and required Bruister and BFLLC to maintain the viaticals.  Pursuant to Federal Rule of Civil Procedure 65(d)(2)(C), the Order extended to persons other than Defendants "who are in active concert or participation with" Defendants, including Prager and PF.  *Id.* at 6.  The Order concluded that "[n]othing herein should be construed as limiting any Defendant from providing for his or her or his or her family's normal activities of daily living."  *Id.* at 7.

On January 22, 2015, the Court held a motion hearing on garnishment issues, during and after which the parties and Prager conferred about the possibility of extending the TRO to keep the financing for the viaticals in place.  The parties were able to reach an agreement, and on January 23, 2015, the Court entered a Consent Order to Convert TRO to Preliminary Injunction [682] signed by Prager and counsel for the parties.  The Consent Order required PF to "pay the premiums and any necessary costs . . . necessary to maintain the [viaticals]" through April 30, 2015.  Consent Order [682] ¶ 1.  The Consent Order allowed PF to continue to collect interest at the rate specified in its agreement with BFLLC and to distribute that interest to investors and affirmed PF's entitlement to principal payments during the pendency of the injunction.  Finally, the Consent Order indicated that PF and Prager "submit to the jurisdiction of this court solely for the purpose of this Injunction."  *Id.* ¶ 8.

As the Consent Order's April 30, 2015 expiration date approached, the parties attempted to reach an agreement about extending the injunction through the date of a scheduled July 14, 2015 evidentiary hearing on Bruister's motion to stay enforcement of the judgments pending appeal and the United States' motion for contempt. When it became apparent that those discussions would not be fruitful, Plaintiffs filed the instant motion. Following a truncated briefing schedule, the Court conducted a telephonic hearing, after which the Court entered its Order [738] extending the Temporary Restraining Order as extended by the Consent Order for fourteen days to give the Court additional time to consider the parties' arguments. The Court is now prepared to rule.

II.     Analysis

    A.     Personal Jurisdiction

Prager first challenges the Court's ability to exercise personal jurisdiction over him. The Court's April 30, 2015 Order [738] concluded that Prager has not demonstrated a lack of personal jurisdiction. Since then, additional evidence regarding Prager's involvement with Defendants bolsters that holding. *See*, *e.g.*, Pls.' Supp. Mem. [741] Ex. A at 1. The Court therefore concludes that personal jurisdiction exists. But as stated in the Order, Prager can re-assert this argument at the July 14, 2015 evidentiary hearing.

    B.     Subject-Matter Jurisdiction

Prager and PF next argue that the Court lacks subject-matter jurisdiction to extend the Consent Order. Specifically, they assert that the Court's post-judgment ancillary jurisdiction does not give it the authority to "force PF to fund payment of the premiums in accordance with the loan documents until Plaintiffs find a buyer for the viaticals." PF's Resp. [733] ¶ 3.

Federal courts generally have "ancillary enforcement jurisdiction . . . to assist in the protection and enforcement of federal judgments." *Peacock v. Thomas*, 516 U.S. 349, 358 (1996). In that regard, the Court may enter orders in an effort "to guarantee eventual executability of[] a federal judgment." *Id.* But the Court's ancillary jurisdiction would not extend to an effort to make a non-party to the judgment liable therefor. *Id.* at 357–58.

The relief Plaintiffs seek—maintenance of the status quo through ongoing financing of the viaticals by PF—does not involve an effort to make PF liable for the underlying judgment. Nor are Plaintiffs asking the Court to compel PF to make a loan, as PF argues. Instead, Plaintiffs have asked the Court to require PF to continue to pay premiums using funds it has already raised *and loaned* to BFLLC for that very purpose. *See* Credit Agreement [736] § 3.1(c). Pursuant to the Credit Agreement, PF loaned BFLLC $1,000,000 to fund the viaticals but held those funds in its possession for the purpose of paying premiums. *Id*.

Prager also maintains that PF did not know about the Court's judgments when it entered into the financing arrangement, but his testimony is at least called into question by other evidence. For example, the record suggests that he received a copy of the judgments on November 13, 2013, Pls.' Repl., [734] Ex. 4 at 1, yet finalized the Credit Agreement and closed the deal as late as one month later. And Prager's correspondence clearly indicates that he was at least aware of the litigation and Bruister's desire to avoid paying a judgment before the Credit Agreement was finalized and backdated to become effective the day before the Court's judgments. *See, e.g.*, Pls.' Supp. Mem. [741] Ex. A at 1. Prager likewise appears to have known before closing that BFLLC transferred its interests in BI to Linda Bruister. Pls.' Resp. [737] Ex. 8 at 5. In sum, Prager has not yet rebutted Plaintiffs' showing of complicity.

5

Finally, PF "urges" the Court to view the credit transaction in light of Mississippi's fraudulent-conveyance statute. PF Resp. [742] at 2; *see* Miss. Code Ann. § 15-3-107. That statute contains a list of factors to which "consideration *may* be given" in determining whether a debtor made a conveyance "with actual intent to hinder, delay or defraud any creditor." *Id.* (emphasis added). As an initial point, PF's focus with respect to the Credit Agreement is too narrow. That conveyance must be viewed in light of the record as a whole. And that record includes a related conveyance of BFLLC's interest in BI to Linda Bruister with Prager's knowledge. It also includes the correspondence among Defendants, their counsel, and Prager regarding efforts to maintain Bruister's assets and possible settlement strategies. In that light, § 15-3-107's non-exclusive list of factors, assuming they apply, would suggest fraudulent conveyance. *See, e.g.*, Miss. Code Ann. § 15-3-107(2)(a), (d), (e), (j). Again, this is a preliminary holding that is subject to change once the parties can be more fully heard.

C.   Preliminary Injunction

For the reasons set forth in the Temporary Restraining Order [668] and above, the Court finds that Plaintiffs are entitled to continued injunctive relief. Until the Court has the opportunity to address these fact issues at the July 14, 2015 hearing, maintenance of the status quo is appropriate.

D.   Bruister's Living Expenses

Finally, Bruister asks the Court to allow him to access funds in the frozen Community Bank account, referred to as Katie Bruister's College Fund, pending the disposition of the pending motions. Specifically, Bruister seeks access to $30,000 to cover his family's living expenses since the date the Court froze his assets through the date of the hearing. As Bruister

6

points out, the Court's Temporary Restraining Order explained that it did not limit him from providing for his and his family's "normal activities of daily living." Order [668] ¶ 11. And Bruister currently lacks access to any funds that could provide for his family's normal activities.

The Court is not unsympathetic to Bruister's situation and concludes that he should have access to some funds. After all, Plaintiffs agreed in the Consent Order that "[n]othing herein should be construed as limiting any Defendant from providing for his or her or his or her family's normal activities of daily living." *Id.* at 7. But the Court also agrees with Plaintiffs that Bruister has yet to begin satisfying the judgments while maintaining at least some assets he could liquidate in order to help support his family and begin paying on the judgments entered against him. Thus, the Court will unfreeze $15,000 in Katie Bruister's College Fund upon a showing that Bruister has liquidated at least $15,000 in assets.

III.   Conclusion

The Court has considered all of the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Plaintiffs' Urgent and Necessitous Joint Motion to Temporarily Extend the Preliminary Injunction Until After a Hearing on the Merits [732] is granted, and the Temporary Restraining Order [668], as modified and extended by the Consent Order [682], is extended until July 15, 2015. Upon motion by Bruister and submission of evidence that he has liquidated assets of at least $15,000 in value, the Court will order that $15,000 be released from Katie Bruister's College Fund.

**SO ORDERED AND ADJUDGED** this the 14th day of May, 2015.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE