UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

THOMAS E. PEREZ, Secretary of the
United States Department of Labor                                                           PLAINTIFF

v.                                                                        CIVIL ACTION NO. 3:13cv1001-DPJ-FKB

HERBERT C. BRUISTER, et al.                                                         DEFENDANTS

consolidated with

JOEL D. RADER and VINCENT SEALY                                                      PLAINTIFFS

v.                                                                        CIVIL ACTION NO. 3:13cv1081-DPJ-FKB

HERBERT C. BRUISTER, et al.                                                         DEFENDANTS


ORDER

This ERISA case is again before the Court, post-judgment, on several motions:  Plaintiff

Vincent Sealy's Motion to Enforce Stay Order and for Other Relief [854]; Defendants' Motion

for Further Relief from the Temporary Restraining Order, as Modified by the Preliminary

Injunction [864]; and Sealy's Motion to Release Funds [875].  For the reasons that follow, the

motion to enforce is granted, and the motion to release funds and the motion for further relief are

denied without prejudice.

I.      Background

As before, *see* Order [848], this Order is written primarily for the benefit of the parties

and the record and assumes familiarity with the general facts of the underlying case and more

specific facts related to the present motions.  In general terms, following the October 16, 2014

entry of a multi-million dollar judgment in favor of Plaintiffs Vincent Sealy and the Secretary of

the Department of Labor, on January 14, 2015, Plaintiffs filed a joint ex parte motion for a

temporary restraining order, which the Court granted on January 16, 2015.  The TRO froze "[a]ll

assets and property of any kind owned or controlled by Defendant[s] Herbert Bruister

("Bruister") [and Bruister Family LLC], except to the extent necessary to preserve the viaticals."

Order [668] at 5.  The Order further stated that "[n]othing herein should be construed as limiting

any Defendant from providing for his or her or his or her family's normal activities of daily

living."  *Id.* at 7.

The TRO was converted to a preliminary injunction by agreed order on January 23, 2015.

That order extended the provisions of the TRO through April 30, 2015.  Order [682] at 1.

Following an evidentiary hearing held on July 14, 2015, the TRO was extended indefinitely

"until further order from the Court."  July 15, 2015 Text Order.

Also following the July 14, 2015 evidentiary hearing, pursuant to an Agreed Order

entered under seal on July 15, 2015, the parties agreed that a portfolio of life-insurance policies

in which Bruister and/or BFLLC had an interest—the so-called viaticals—would be sold and that

"[t]he first $900,000" in proceeds from the sale—plus some additional money, including

$153,000 for viaticals that matured prior to the entry of the order and proceeds that would be

obtained after the payment of certain fees to Premium Funding—"shall be paid into the registry

of the Court" with certain exceptions.  Order [758] at 7, 9.  The Order provided that "Plaintiffs

and Bruister, BFLLC, BAI, and Linda Bruister reserve all rights with respect to the application

of the proceeds paid into the registry of the Court pursuant to this Order."  *Id.* at 14.

In the meantime, a number of additional motions related to Plaintiffs' collection efforts

and Defendants' assets followed.  Relevant here, on March 20, 2015, Defendants filed a motion

to stay enforcement of the judgment pending appeal and to lift the freeze on other assets.  In that

motion, they identified specific assets they would agree to offer as substitute security.  The Court

granted the motion "to the extent execution is stayed but denied [it] to the extent it [sought] an

order lifting the freeze."  Order [848] at 12.  The Court gave Bruister 14 days (from February 5,

2016) to provide the assets as security, after which "an order will be entered staying the

proceedings under Rule 62(d)."  *Id.* at 7.  The Court further noted, consistent with Defendants'

motion, that "if Plaintiffs ultimately prevail [on appeal], the security that has been offered would

immediately fall into their hands."  *Id.*

On May 3, 2016, the Fifth Circuit affirmed (as modified) the Court's judgment.  Since

then, it appears that no amount of the judgment has been satisfied, and the parties have filed the

present motions.  All matters raised have been fully briefed, and the Court is prepared to rule.

II.     Sealy's Motion to Enforce

In his May 12, 2016 motion to enforce, Sealy complains that Bruister did not comply

with the Court's Order [848] requiring him to provide security within 14 days.  As such, he asks

that the Court order Bruister to do a number of specific things to rectify his non-compliance.  By

the time Sealy replied, some of the original requests were moot, so the outstanding requests are

that the Court order Bruister to:  (1) transfer title to three vehicles to BAESOP LLC;[1] (2) provide

information, including medical records, pertinent to conducting a valuation of Bruister's life-

insurance policy or policies; and (3) "[s]atisfy the Judgments and the Fee Award no later than

---

[1] The original order discussed four vehicles, but one of those has since been repossessed.

3

May 20, 2016." Mot. [854] at 4. The Court will address each request in turn after first addressing Bruister's argument that the Order is unenforceable.

A.    Enforceability of the Order

Bruister argues that the stay order was conditioned upon Bruister timely posting the required security, and that, as a result of his failure to do so, a stay was never in place and he cannot now be held responsible for his failure to comply with the Court's order. Defs.' Resp. [860] at 9. He says that, when he failed to post the collateral security, Plaintiffs' remedy "was to continue their post-judgment collection activities under Federal Rule 69." *Id*. at 10.

Sealy responds that the Court effectively granted the relief Bruister sought—a stay—and conditioned that stay on Bruister offering the enumerated security. Sealy points to the mandatory nature of the language used in the Court's order, that Bruister "will be required to offer substitute security." Order [848] at 5. Indeed, the concluding paragraph of the Order expressly granted the stay Bruister sought. Sealy argues that "[i]t would be manifestly unjust to allow Mr. Bruister to benefit from this dilatory conduct by getting the benefit of the stay he sought and received without providing the security he offered." Pl.'s Reply [865] at 5.

Neither party cites any law on this point, but the Court agrees with Sealy that to permit Bruister to benefit from his failure to comply with the Court's Order, which was entered at Defendants' behest to stay collection efforts pending appeal, would be patently unfair. The Court possesses "inherent power to enforce compliance with [its] lawful orders." *Shillitani v. United States*, 384 U.S. 364, 371 (1966). Defendants received the benefit of the relief they

4

sought because all collection efforts ceased.  Bruister's failure to comply with the Order does not

render the Court unable to enforce it.[2]

B.      Vehicles

The Order provided as follows with respect to the vehicles:  "In his motion, Bruister

agreed to offer four vehicles as security, a 1978 truck, a 2000 Lexus, a 2004 Lexus, and a 2008

Mercedes.  Those vehicles will be part of the security and will be transferred to Plaintiffs should

they ultimately prevail."  Order [848] at 7.  Despite having previously offered the vehicles as

security for the stay he sought, Bruister now argues that requiring him to turn over the vehicles

"would unnecessary[il]y inconvenience Mr. and Mrs. Bruister and cause them irreparable

damage and harm," and he "requests this Court to reconsider that portion of its Stay Order."

Defs.' Resp. [860] at 8.  Bruister should have considered the inconvenience of lacking a vehicle

before offering the vehicles as security to obtain the stay.  Because Plaintiffs "ultimately

prevail[ed]" on appeal, Bruister shall transfer the three vehicles in question to Plaintiffs within

45 days of the entry of this order.

C.      Life-Insurance Policy

As to the life-insurance policy, the Order provided:

> Bruister shall assign and surrender one of his two life-insurance policies to
> Plaintiffs.  If Plaintiffs elect to sell the policy, the proceeds would be deposited
> into the registry of the Court pending the outcome of the appeal.  Likewise, death
> benefits would be paid to the registry of the Court if applicable.  Bruister is not

---

[2] It should be noted that Plaintiffs seek to enforce the Order only as to assets Bruister agreed to offer as substitute collateral.  In any event, the judgment is now subject to execution. Bruister's attempts to avoid the transfers makes his prior offers look like disingenuous delay tactics.

permitted to sell the other policy absent further Court order or agreement of the parties.

Order [848] at 6. Sealy apparently desires to sell the policy Bruister assigned him, and he has requested that Bruister turn over certain related paperwork and execute a medical records release form "so that Plaintiffs can obtain medical records and obtain a life expectance necessary to market and sell the life insurance polic(ies)." Mot. [854] at 4. Bruister responded that the Order "does not require [him] to provide such information or documents," and invoked his privacy rights under HIPAA. Defs.' Mem. [860] at 9.

In rebuttal, Sealy points to language in the assignment of the policy at issue, in which Bruister agreed

> to cooperate with Assignee with respect to any actions requested by Assignee to carry out the actions contemplated by the Assignment of his ownership rights in the Insurance Policy to the Assignee to the extent that such actions are approved by the Court and do not violate any of Mr. Bruister's other legal rights.

Assignment [855-4]. Sealy insists that without some mechanism for obtaining the medical information, the "option to sell the policy contemplated by the Stay Order is worthless." Defs.' Reply [865] at 8. The Court agrees, concludes that HIPAA does not shield Bruister from such requests, and orders Bruister to cooperate with Sealy in his efforts to value and sell the policy.

"HIPAA generally provides for confidentiality of medical records." *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. §§ 1320d-1–1320d-7). But "HIPAA does not contain any express language conferring privacy rights upon a specific class of individuals. Instead, it focuses on regulating persons that have access to individually identifiable medical information." *Id.* The HIPAA regulations permit a covered entity otherwise prohibited from disclosing protected information in the absence of a waiver to disclose such information "[i]n

response to an order of a court." 45 C.F.R. § 164.512(e)(1)(i). Bruister has pointed to nothing in

the text of HIPAA or its regulations that would prevent him from providing a medical release to

Plaintiffs if ordered to do so by the Court. The parties are instructed to agree to the terms of a

protective order to govern the release of the medical information sought by Sealy, and Bruister is

ordered to cooperate with Sealy relative to the assigned life-insurance policy.

        D.      Satisfaction of the Judgments

        Sealy's main complaint is that the judgment in this case—entered more than two years

ago and affirmed more than eight months ago—has not been fully paid. The Court's judgment

awarded Plaintiffs a monetary award of "equitable restitution." *See* Order [616] at 74; Fifth

Circuit Order [868] at 21 (explaining that this Court "granted equitable restitution in the amount

the ESOP overpaid" for BAI stock). Such awards may be enforced by contempt. *Chesemore v.*

*Fenkell*, 829 F.3d 803, 817 (7th Cir. 2016). Sealy is not yet asking the Court to hold Bruister in

contempt, but he now attempts to lay the groundwork for such a motion by requesting that the

Court set a deadline for Bruister to satisfy the judgment.

        In response to Sealy's request, Bruister argues that, given his financial circumstances, his

"liability under the Judgment and the attorneys' fees award should be reduced." Pl.'s Resp.

[860] at 12 (citing *Whitfield v. Lindemann*, 853 F.2d 1298 (5th Cir. 1988)). But his sole

authority for that argument does not support reduction of the existing judgment against him.

While the *Whitfield* court did consider the defendants' liquidity, it did so from the perspective of

whether the defendants' malfeasance caused all of the plan's losses attributed to them by the

district court. *See Whitfield*, 853 F.2d at 1304 ("If the trustee commits a breach of trust and if a

loss is incurred the trustee may not be chargeable with the amount of the loss if it would have occurred in the absence of a breach of trust."). Under the unique factual circumstances of *Whitfield*, the defendants' ability to pay was relevant to causation. Nothing in *Whitfield* suggests that the Court may, or should, reduce its award—post-judgment—based on Bruister's ability to pay. And if *Whitfield* had any application at all, it should have been raised before judgment was entered. The Court agrees with Sealy that the time has come to bring this matter to an end and will order Bruister to satisfy the judgment within 45 days of the entry of this order.[3]

III.    Defendants' Motion for Relief from Injunction

In their motion, Bruister and BFLLC ask the Court to unfreeze three bank accounts to help provide for the Bruisters' normal activities of daily living. The amounts in these three accounts, as of May 31, 2016, totaled $41,070.95. The Court froze the accounts in question in an effort to prevent Defendants from dissipating assets that could be used to satisfy the judgment. There also remains an unresolved question whether these funds were transferred in an effort to avoid judgment. Once Bruister begins to satisfy the judgment, the freeze may need to be lifted. For now, it shall remain in place.

IV.    Sealy's Motion to Release Funds

The parties agreed to sell the viaticals pursuant to a July 15, 2015 Agreed Order [758], depositing proceeds into the registry of the Court. Bruister thereafter offered to release his 50%

---

[3] The extent to which the judgment has been satisfied by funds received from the settling defendants or other settling parties in related lawsuits is not clear to the Court. The Court will therefore direct the parties to confer about the outstanding amount owed on the judgment and notify the Court as to whether they agree on a figure. If the parties are unable to agree to the amount owed, the Court will entertain a motion seeking to establish the outstanding amount.

interest in the proceeds as substitute collateral in his effort to obtain a stay of execution.  Defs.'

Mem. [723] at 13–14, 19.  The resulting order provided:

> Bruister will be required to offer substitute security consistent with the security he offered in his motion and in post-hearing communications.  The security is as follows:
>
> . . . Life Insurance Maturity Contracts (Viaticals)- Perhaps the most significant asset available is the portfolio of policies the parties have referred to as viaticals. This asset could be worth several million dollars, but it could also be worth far less depending on how it is managed.  Regardless, there is already an agreed order . . . that allows Plaintiffs to sell the policies with funds to be paid in part into the Court.  That agreement is incorporated herein by reference and preserves Plaintiffs' interests.

*See* Order [848] at 5.  Sealy now seeks an order disbursing the proceeds from the sale of those

assets.

Defendants object to the disbursement of the proceeds to Plaintiffs and insist that,

instead, the Court should release the funds to BFLLC, although they filed no motion requesting

that relief.  *See* L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-

motion in the same document.").  Defendants explain that Bruister & Associates Investments,

which is owned by BFLLC, owned the viaticals and that the viaticals are "the general assets of

BFLLC."  Defs.' Resp. [880] at 1.  Defendants also argue that, for the viaticals or their proceeds

to be recoverable from BFLLC, a non-fiduciary defendant, they must be traceable to funds

BFLLC received for overpayment of BAI stock.

Sealy makes a number of arguments in rebuttal, to which Defendants had no opportunity

to respond.  First, Sealy notes that the viaticals were part of the security the Court ordered in lieu

of a supersedeas bond to stay collection efforts pending appeal, making the proceeds from their

sale available to satisfy the judgment.  *See* 11 Fed. Prac. & Proc. Civ. § 2905 ("If the judgment is

affirmed or the appeal dismissed, the judgment may be satisfied out of the bond.").  Neither

Bruister nor BFLLC objected to that portion of the Order through a motion for reconsideration or

appeal.  Sealy also argues that any tracing requirement related to the equitable-restitution award

against BFLLC does not apply with respect to the attorneys' fee award.  Finally, Sealy argues

that he should be entitled to discovery and an evidentiary hearing regarding the traceability of the

viaticals to the overpayments and a potential veil-piercing argument.[4]

As noted, Bruister did not have an opportunity to respond to these arguments.  In light of

that fact, and because the Court has ordered Bruister to satisfy the judgment, Sealy's motion is

denied without prejudice.  Bruister has already informed the Court that he controls 50% of the

assets in question.  And if he determines that the proceeds from the sale of the viaticals should be

used to pay down the judgment, then he may move to have them released to Plaintiffs.  If he is

able to satisfy the judgment without recourse to the viaticals, BFLLC may move to have the

funds released to it.  Finally, if Plaintiffs remain unsatisfied with Bruister's compliance with the

Court's Order, they may again move to have the funds disbursed to them, at which time Bruister

will be in a position to respond to the arguments raised in Sealy's rebuttal on the instant motion.

V.      Conclusion

The Court has considered all arguments.  Those not specifically addressed would not

have changed the outcome.  For the foregoing reasons, Plaintiff's Motion to Enforce Stay Order

---

[4] Sealy also asserts that Defendants made their argument regarding traceability to the
Fifth Circuit, which rejected the argument as waived.  But the argument the Fifth Circuit rejected
as waived related solely to whether the fee award should have been rendered against BFLLC and
did not address the traceability requirement as to the judgment against BFLLC.  *See Perez v.
Bruister*, 653 F. App'x 811, 811–12 (5th Cir. 2016).

and for Other Relief [854] is granted; Defendants' Motion for Further Relief from the Temporary

Restraining Order, as Modified by the Preliminary Injunction [864] is denied without prejudice;

and Sealy's Motion to Release Funds [875] is denied without prejudice.  The Court hereby orders

Bruister to:  (1) transfer the vehicles in question to Plaintiffs within 45 days of the entry of this

order; (2) cooperate with Sealy relative to the sale of the assigned life-insurance policy,

including, but not limited to, by providing a medical release; and (3) satisfy the judgment within

45 days of the entry of this order.

**SO ORDERED AND ADJUDGED** this the 4th day of January, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

11